APOSTLES OF THE SACRED HEART *v.* DAVID R. CUROTT
ET AL.

PETERS, PARSKEY, ARMENTANO, SHEA and COVELLO, Js.

Argued February 11—decision released July 20, 1982

*Joel M. Ellis,* with whom, on the brief, was *Catherine P. Kligerman,* for the appellant-appellee (defendant John V. C. McKinney).

*Roger J. Frechette* for the appellee-appellant (plaintiff).

Covello, J. The plaintiff, a religious corporation, and the defendants are abutting landowners unable to agree on the location of the boundary between their respective properties in the town of Haddam.

The plaintiff sought a declaratory judgment quieting title in its favor to a 1.32 acre triangular parcel on the basis of the boundary as it claimed it to be. It also sought an injunction restraining the defendants' use of the disputed land, other equitable relief, and damages.

The trial court concluded that the plaintiff was the owner of the land in dispute, ordered the defendants to remove a wire fence erected on the plaintiff's land, and awarded $350 as partial reimbursement of surveying fees incurred by the plaintiff. Both sides have appealed.

The defendants contend that a deed, senior in the chain of title, unequivocably established their claim to the disputed land. Therefore, they argue that contrary extrinsic evidence allowed by the court, which was at variance with the deed, was inadmissible. The defendants further contend that the court's refusal to view the premises constituted error. Finally, they contend that the court's subsequent articulation of the original memorandum of decision did not fulfill the requirements of Practice Book § 3060B in that the basis of the decision was factually inadequate and that their legal claims were not fully addressed.

The plaintiff has filed a cross appeal claiming that the award of $350 for surveying fees is unreasonable in view of the $9548 surveying charges actually incurred.

We hold that all of these claims are without merit and find no error.

The plaintiff and the defendants are owners of contiguous, multi-acre properties on the northwesterly side of Candlewood Hill Road in a rural area of Haddam.[1]

---

[1] The defendant, John V.C. McKinney, purchased the parcel of defendants Curott after the action started. He was thereafter added as a party defendant.

The boundary dispute placed in issue the owner-ship of a triangular parcel of land which was bor-dered by Upper Shop Pond.

The defendants' claim to the more easterly line as the boundary between the properties is based on an instrument from D & H Scovil, Inc. to William A. Maynard dated June 24, 1926. In this deed, a parcel, which included the triangular area in ques-tion, is described by quadrants; i.e. abutting land-

marks or property owners to the north, south, east and west are listed in sequence by direction, thus creating a description of the property being transferred by enclosing it through reference to prominent landmarks or owners on all its sides. This deed described the tract as being bounded on the *north* by the "high water mark of the brook which leads from the Upper Shop Pond, so-called . . . ." It was bounded "[w]*esterly* partly by land of Willis A. Bonfoey and partly by present High Water Mark of Upper Shop Pond, so-called, and partly by land around the South Wing of Upper Shop Dam." (Emphasis added.)

The defendants argue that in order for the boundary to be where the plaintiff claims it to be, the description in the Scovil deed would have to read "[w]esterly partly by land of Willis A. Bonfoey and [*northerly* and westerly] by present High Water Mark of Upper Shop Pond, so-called . . . ." (Emphasis added.) Since the deed does not show Upper Shop Pond as being one of the northerly boundaries, the defendants argue that any extrinsic, parol evidence contradicting the calls as set forth in the deed was not permitted.

The legal proposition advanced by the defendants is correct. "In determining a boundary line in a deed, the law is clear that the description in the deed, if clear and unambiguous, must be given effect. In such a case, there is no room for construction." *F. & AK, Inc.* v. *Sleeper,* 161 Conn. 505, 510, 289 A.2d 905 (1971).

Application of this legal principle to the present circumstance, however, presupposes that the triangular parcel in dispute is in fact bounded on its north side by Upper Shop Pond. This may or may not be the case.

Defendants' exhibit 1 is a survey of the McKinney parcel showing in detail the boundary as claimed by the defendants.

Plaintiff's exhibit B is a survey of the plaintiff's parcel which also includes a more extensive depiction of Upper Shop Pond.

When one exhibit is superimposed upon the other with the easterly boundary of the disputed parcel serving as a common reference line, it is evident that the line denoting north on exhibit B is at least 15° of arc more easterly than the line denoting north as shown on exhibit 1. Further, examination of both surveys discloses that the shore line of Upper Shop Pond extends in two distinct directions, one being apparent northeast and southwest and the other being apparent east and west.

The uncertainty as to where north actually lay coupled with the irregular contour of the land abutting Upper Shop Pond in this area lends credence to an argument that the reference contained in the Scovil deed to the property being bounded "[w]esterly . . . by present High Water Mark of Upper Shop Pond . . ." in fact constitutes an acceptable description of the property in this area.

Evidence of the actual geographical circumstances as disclosed by the surveys, coupled with the discrepancy as to where north is shown on the surveys makes it clear that the quadrant description in the Scovil deed was inadequate to fix the boundary disputed by these parties. "Hence, the trial court correctly concluded that the deed [was] rendered uncertain by comparing [it] with the land which [it] purported to describe. There was, therefore, a latent ambiguity in the description of the line. The latent ambiguity thus disclosed by parol could be removed by parol. *Beach* v. *Whittlesey*, 73 Conn. 530, 534, 48 A. 350 [1901]." *F. & AK, Inc.* v. *Sleeper*, 161 Conn. 505, 511, 289 A.2d 905 (1971).

The evidence supporting the court's conclusion in favor of the plaintiff was significant. There was expert civil engineering testimony fixing the line

as claimed by the plaintiff, as well as aerial photographs of the site which showed open fields to the immediate west of the line claimed by the plaintiff and a large forest to the immediate east of the line, a significant geographical disparity in the character of the land precisely along the line claimed by the plaintiff.

Further, the court found that Mrs. Curott admitted removing a barbed wire fence which had run along the boundary claimed by the plaintiff. Her actions were witnessed by a neighbor who testified that a new fence was put in place by the Curotts along the line which they are now claiming.

Finally, the court found that Walter Kovacik, the defendants' predecessor in title, had erected the original barbed wire fence along the line claimed by the plaintiff in order to keep his cows out of the woods and that he had erected this fence along the boundary line. These facts fully support the trial court's conclusion that the boundary between the properties lay along the more westerly line claimed by the plaintiff.

The defendants' next claim is that the court erred in not viewing the premises as formally requested. Such an exercise is within the sound discretion of the court. *O'Connor* v. *Dory Corporation,* 174 Conn. 65, 72, 381 A.2d 559 (1977). "The test is whether a view is necessary or important in order to obtain a clearer understanding of the issues and to apply the evidence properly. 2 Wigmore, Evidence (3d Ed.) § 1162 et seq." *Dickson* v. *Yale University,* 141 Conn. 250, 256, 105 A.2d 463 (1954). In addition to the testimony of two civil engineers, the court had before it two deeds, two surveys, an assessor's aerial photo-map and several photo-

graphs taken in the area of the disputed boundary. Under these circumstances there was no abuse of discretion in not viewing the premises.

The defendants further claim that the court's articulation of decision does not meet the requirements of Practice Book § 3060B[2] in that the court did not state its conclusions as to five claims of law presented. Although these claims do not appear in the record, the appendix to the defendants' brief discloses claims of law raising five issues: (1) The deed submitted by the defendants establishes that the plaintiff has no title to the area in dispute; (2) extrinsic evidence may not be used to vary the description in the senior deed; (3) the plaintiff's expert may not be relied upon to establish the border; (4) no costs may be awarded for the plaintiff's survey; and (5) the court should view the premises.

No matter how articulated, the first three issues all deal with the defendants' claim to the absolute integrity of the quadrant description contained in the Scovil deed previously discussed. Although the memorandum of decision, as subsequently articulated, does not specifically deal with this subject, the court's unequivocal adoption of the parol or extrinsic evidence offered by the plaintiff as to the boundary's location demonstrates a clear rejection of this legal claim. The matter of the survey expenses was in fact taken up, discussed and decided in both the memorandum of decision and its sub-

---

[2] Practice Book § 3060B provides in relevant part: "[W]hen rendering judgments in trials to the court, the court shall, either orally or in writing, state its decision on the issues in the case and, if there are factual issues, the factual basis of its decision. The court shall include in its decision its conclusion as to each claim of law raised by the parties."

sequent articulation. There is no merit to the claim that the court did not address this issue. Finally, the court stated in its articulation of decision, "[t]he court decided the issue of where the boundary was located was clear and that a view of the premises was not necessary." Again, there is no merit to the claim that this issue was not determined.

Finally, the plaintiff submits in its cross appeal that the court erred in awarding only $350 as additional costs for survey expenses. General Statutes § 52-257[3] authorizes a reasonable sum to the prevailing party for the preparation of maps, plans and drawings necessary or convenient in the trial of any case.

The plaintiff's surveyor testified that in order to determine the matter properly, it was necessary to survey the plaintiff's entire tract comprising sixty-five acres. He did this at a cost of $9548. The defendants' surveyor testified that his fee for simply surveying the line in dispute was $350. What amount was reasonable was a matter to be determined by the court. The testimony of the defendants' surveyor provides an adequate factual basis for the amount determined by the court to have been reasonable. Since there is an adequate factual basis for the court's determination on this issue the conclusion must stand.

There is no error.

In this opinion the other judges concurred.

---

[3] General Statutes § 52-257 provides in relevant part: "Parties shall also receive . . . for maps, plans, mechanical drawings and photographs, necessary or convenient in the trial of any case, a reasonable sum . . . ."