PATRICK MARSHALL ET AL. *v.* JOSEPH SOFFER
(AC 19147)

O'Connell, C. J., and Zarella and Dupont, Js.[1]

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued February 14—officially released July 11, 2000

*Roger Sullivan,* for the appellant (defendant).

*Elton B. Harvey III,* for the appellees (plaintiffs).

### Opinion

DUPONT, J. This is an appeal from the judgment rendered by the trial court in favor of the plaintiffs, Patrick Marshall and Deborah Marshall, quieting title in them to a parcel of property located on Damascus Road in the town of Branford, and ordering that the defendant, Joseph Soffer, remove a fence and other

material placed on the property and restore the area to its prior condition, "insomuch as that is reasonably possible, by the said removal and the removal of any dead brush, limbs or other debris."[2]

The defendant claims that the court should have (1) concluded that the plaintiffs' deed to the parcel was rendered ambiguous because a starting monument of the deed had been lost, (2) applied the doctrine of acquiescence in a boundary and (3) concluded that the defendant acquired title to the property by adverse possession.[3] The issue on appeal is whether the judgment of the court that quieted title in the plaintiffs was reached by a legally correct methodology, supported by the facts in the record. We affirm the judgment of the trial court.

The plaintiffs' complaint sought a determination of the common boundary line between their property and that of the defendant, and to quiet title to the land area that lies between the two disputed boundary lines. The facts that follow were either found by the court or are not in dispute. The plaintiffs' property was originally part of a farm owned by the defendant's family. The property that is now owned by the plaintiffs was carved out of the property comprising the farm, and was first conveyed by Louis Soffer to Jacob Soffer by warranty deed in 1952. The description in that warranty deed, which is the same as the description in the plaintiffs' deed, was plotted by the plaintiffs' surveyor on a map. That map was introduced into evidence as exhibit A. The map is not referenced, however, in any relevant deed and is not recorded. It differs from a 1967 map,

_____

[2] While the appeal was pending, the plaintiffs filed a motion in the trial court to terminate the stay of execution of the orders. The court granted the motion as to the removal of the fence only, ordering that it be removed within thirty days.

[3] The defendant alleged in a special defense that he had acquired title to the disputed land by adverse possession.

which was introduced into evidence as exhibit E. The 1967 map was prepared for the defendant and recorded in the land records of the town of Branford in 1968 without being referenced to any deed or to any grantor or grantee. The map is not signed and bears the following notation: "Lines as agreed on by Soffer and Huzar."

From 1962 to 1972, the property now owned by the plaintiffs was owned by John Huzar and Anna Huzar. In 1972, John Huzar and Anna Huzar conveyed the property to Andrew Huzar and Edith Huzar. The latter Huzars conveyed the property to the plaintiffs' predecessor in title in 1979. The plaintiffs acquired the property in 1986. The description in the plaintiffs' deed is the same description used in the deeds of each of the predecessors in title. The outline of the property on the 1967 map does not follow the legal description of the warranty deed of the plaintiffs. The property now owned by the defendant was described in a 1957 conveyance, which description excepted the parcel now owned by the plaintiffs. The excepted parcel in that 1957 deed is particularly described, using the same description as is contained in the deed to the plaintiffs. Thus, no deed description in the chain of title of either the plaintiffs or the defendant matches that of the 1967 map.

The court found that there was no recorded boundary line agreement that referred to the 1967 map or to the notation on it, and that the plaintiffs had no notice of that map. The court concluded that (1) there was no evidence to support the defendant's special defense of adverse possession,[4] (2) the 1967 map did not supersede the description in the deeds in the plaintiffs' chain of title, (3) the descriptions in the plaintiffs' deed and in

_____

[4] The plaintiffs do not claim that adverse possession is inappropriately raised as a special defense rather than by way of a counterclaim or cross complaint.

the deeds of their predecessors in title are not ambiguous[5] and (4) the boundary as claimed by the defendant has not been established by acquiescence.

The ambiguity claimed by the defendant is that the northwest corner of the property, which is the place of beginning as described in the plaintiffs' deed and in the deeds of their predecessors in title, could not be located on the ground at the time the plaintiffs took title. The defendant also claims that the street line of Damascus Road (formerly Stony Creek Road) was undetermined in 1952 when the plaintiffs' property was first conveyed by Louis Soffer to Jacob Soffer.

The defendant argues that the northwest corner was evidenced by a stone wall but that when exhibit A was prepared, the northwest corner as a starting point had become uncertain because the stone wall had fluctuated in location over the years. The defendant concedes that the words used in the description of the plaintiffs' deed are unambiguous and that the deed is not ambiguous on its face, but claims that the deed contains a latent ambiguity because its starting point eventually became uncertain when compared to the actual land that the deed purported to convey. In other words, it is the defendant's claim that when it is no longer possible to replicate a starting point on the ground to correspond with a deed description that begins with that starting point, the deed becomes ambiguous because it contains references to monuments that no longer exist or that have changed. The defendant agrees, however, that "[t]he physical disappearance of a monument does not terminate its status as a boundary marker, provided that its former location can be ascertained through extrinsic evidence." (Internal quotation marks omitted.) *Koen-*

---

[5] The court's conclusions that the description in the plaintiffs' deed is not ambiguous and that the 1967 map does not supersede that description or render the deed description ambiguous will be discussed together.

*nicke* v. *Maiorano,* 43 Conn. App. 1, 12, 682 A.2d 1046 (1996).

The defendant claims that the court made no effort to reconstruct the location of the stone wall as a monument or the location of Damascus Road but, instead, improperly concluded that the deed description as shown on exhibit A controlled the resolution of this case. The defendant claims that the deed description shown on exhibit A is fundamentally flawed because it uses the end of the existing stone wall as the northwest corner and starting point for the deed description.

The court disregarded the 1967 map because it was not indexed in the land records as being in the chain of title of either the plaintiffs or the defendant. The court credited the testimony of the plaintiffs' expert who had prepared exhibit A and concluded that the original description in the deed of Louis Soffer to Jacob Soffer, the same property now owned by the plaintiffs, could be replicated or found on the ground.

The 1967 map was not referenced in any deed, and no deed description after that date in the chain of title of either the plaintiffs or the defendant was amended to reflect any change in the boundaries of land conveyed. We do not agree with the defendant that a map that is not indexed as being in the chain of title of either the plaintiffs or the defendant should alter the plaintiffs' deeded description without actual or constructive notice of the map or without an agreement recorded in the land records.

According to the plaintiffs, the 1967 map is equivalent to an unrecorded instrument because it does not involve their chain of title. Although maps that are part of the deeds to which they refer may be filed in a special index in a town clerk's office, the filing is not sufficient to charge a title holder with notice of the map unless the terms of a relevant recorded deed point to the map.

See *Kulmacz* v. *Milas*, 108 Conn. 538, 541–42, 144 A. 32 (1928). There is no notice of the contents of a map except if the terms of a recorded deed refer to the map. *Powers* v. *Olson*, 252 Conn. 98, 108, 742 A.2d 799 (2000).

In determining the location of a boundary line expressed in a deed, if the description is clear and unambiguous, it governs and the actual intent of the parties is irrelevant. *Koennicke* v. *Maiorano*, supra, 43 Conn. App. 10; see also *F. & AK, Inc.* v. *Sleeper*, 161 Conn. 505, 510, 289 A.2d 905 (1971). The deed in the present case begins with the words "at the Northwest corner of land herein at its intersection of land now or formerly of Katherine Link Knapp . . . ." The description does not begin with words relating to a stone wall, and only mentions a stone wall to describe the end of the westerly boundary at Knapp's land and the northerly boundary "along said stone wall to the point or place of beginning."[6]

A latent ambiguity arises from extraneous or collateral facts that make the meaning of a deed uncertain although its language is clear and unambiguous on its face. *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 782, 653 A.2d 122 (1995). A latent ambiguity can exist if the distances given in a deed do not "strike land" of a landowner as mentioned in the

---

[6] The deed description of the land now owned by the plaintiffs has remained the same since 1952 and is as follows: "[A]ll that certain piece or parcel of land beginning at the Northwest corner of land herein at its intersection of land now or formerly of Katherine Link Knapp; thence Easterly along Stony Creek Road, ninety (90) feet; thence Southerly at right angles to Stony Creek Road along land now or formerly of Louis Soffer, one hundred fifty (150) feet; thence Westerly at a right angle to the last described line along land now or formerly of Louis Soffer to a stone wall separating land herein from land now or formerly of Katherine Link Knapp; thence Northeasterly along said stone wall to the point or place of beginning, bounded: NORTHERLY: by Stony Creek Road; EASTERLY: by land now or formerly of Louis Soffer; SOUTHERLY: by land now or formerly of Louis Soffer; and WESTERLY: by land now or formerly of Katherine Link Knapp."

deed; *F. & AK, Inc.* v. *Sleeper*, supra, 161 Conn. 510–11; or if a discrepancy as to the direction of one of the four borders exists; *Apostles of the Sacred Heart* v. *Curott*, 187 Conn. 591, 598, 448 A.2d 157 (1982); or if the description is too general, such as one fixing the location of a boundary as "the top of the mountain"; *Young Men's Christian Assn.* v. *Zemel Bros., Inc.*, 171 Conn. 310, 311, 370 A.2d 937 (1976); or if a deed refers to a map that is ambiguous or unclear. *Lake Garda Improvement Assn.* v. *Battistoni*, 160 Conn. 503, 510–11, 280 A.2d 877 (1971). In the event a latent ambiguity is found, the ambiguous language in the grant is ordinarily construed against the grantor and in favor of the grantee, and "the grantee may adopt the boundary most favorable to him." Id., 514. In the present case, the court correctly concluded that no such latent ambiguity exists and that the plaintiffs' deed description was not ambiguous.

There is nothing ambiguous about the deed description in the present case. In 1986 when the plaintiffs acquired title, without notice of the 1967 map, they could have followed easily the deed description on the ground. The stone wall runs south to north along property "now or formerly of Katherine Link Knapp." The boundaries are described in terms of the abutting land owners and the road, not a stone wall. Adjacent land may be a monument if the boundary of it is fixed. See *Staff* v. *Hawkins*, 135 Conn. 316, 319, 64 A.2d 176 (1949).

The court correctly concluded that the plaintiffs' deed was not ambiguous and that the 1967 map did not amend or supersede the deed's description.

The defendant next claims that the plaintiffs or their predecessors in title acquiesced in the boundary as established in the 1967 map. Acquiescence in the use and development of an area by a landowner is defined as a consent to the boundary as claimed by an adjoining owner and can estop the acquiescing landowner from

pursuing a claim of ownership. See *DelBuono* v. *Brown Boat Works, Inc.*, 45 Conn. App. 524, 533, 696 A.2d 1271, cert. denied, 243 Conn. 906, 701 A.2d 328 (1997). The acquiescence must occur under circumstances that indicate an assent to such a use. Id.

The defendant introduced applications for building permits to show that a predecessor in title of the plaintiffs had acquiesced in the boundary as depicted on the 1967 map. The court found that the distances shown on the building permits did not conform to the distances described in the plaintiffs' deed or in the 1967 map. Because of the contradicting dimensions, the court discounted the evidence. We conclude that the record does not establish that the plaintiffs or their predecessors in title agreed that the disputed land could be used by the defendant or that the boundaries were those of the 1967 map, rather than those in their deed description.

The last claim of the defendant is that he acquired title to the disputed land by adverse possession. The court found that the defendant produced no evidence to support this claim. The court also noted that all of the witnesses indicated that neither the defendant nor his agents or employees ever conducted any activity or business on the disputed land or treated it as the defendant's property. There was evidence, however, that the plaintiffs had treated portions of the area as their own. The defendant claims that some witnesses testified that "the line of occupation" (the disputed area) had been observed by the plaintiffs' predecessors in title, but admitted that the land was overgrown and that there was little evidence of cultivation. The plaintiffs' immediate predecessor in title testified that while he owned the land, he had deposited debris there, but that the defendant and his predecessors had not cultivated, graded or trimmed anything on the land. The defendant paid property tax to the town of Branford on the disputed land, but that is only one relevant factor

to be considered in determining whether the defendant acquired the land by adverse possession and does not, by itself, require reversal of the court's judgment. We hold that the court properly concluded that the defendant had not proven by clear and convincing evidence that he had ousted the plaintiffs or their predecessors of exclusive possession for fifteen years by open, visible and adverse acts. See *Clark* v. *Drska*, 1 Conn. App. 481, 485, 473 A.2d 325 (1984).

The judgment is affirmed.

In this opinion the other judges concurred.